**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| RONNIE MOORE, | ) | CASE NO. 1:11-cv-00508 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY HOSPITALS, | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| Defendant. | ) | |
| | ) | |

  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant University Hospitals Cleveland Medical Center d/b/a University Hospitals Case Medical Center ("UHCMC") respectfully requests that this Court grant it summary judgment as to all of Plaintiff Ronnie Moore's claims that have not already been dismissed. Plaintiff's Title VII claim fails as a matter of law on multiple grounds. First, he failed to exhaust his administrative remedies as required by statute. Second, he can produce no evidence to establish a prima facie case of reverse gender discrimination, or evidence that the reasons for his termination were a pretext for reverse gender discrimination. Plaintiff's invasion of privacy claim likewise fails, as he had no reasonable expectation of privacy in using a computer owned by UHCMC to view and show his colleagues sexually explicit photographs of a female co-worker. Because there are no genuine issues of material fact for trial and UHCMC is entitled to judgment as a matter of law, summary judgment should be entered in favor of UHCMC.

  A Memorandum in Support is attached.

        Respectfully submitted,


        */s/ Barton A. Bixenstine*_____
        Barton A. Bixenstine (0034130)
        **Vorys, Sater, Seymour and Pease LLP**
        2100 One Cleveland Center
        1375 East Ninth Street
        Cleveland, OH 44114-1724
        Telephone (216) 479-6192
        Facsimile (216) 973-3708
        Email babixenstine@vorys.com

        *Counsel for Defendant University Hospitals*
        *Cleveland Medical Center d/b/a University*
        *Hospitals Case Medical Center*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONNIE MOORE, | ) | CASE NO. 1:11-cv-00508 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY HOSPITALS, | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **UNIVERSITY HOSPITALS' MOTION** |
| Defendant. | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |

**I.     INTRODUCTION**

On December 20, 2010, Plaintiff filed a *pro se* complaint against UHCMC in the Cuyahoga County Court of Common Pleas, styled *Ronnie Moore v. University Hospitals*, Case No. CV-10-744252. Plaintiff alleged his termination violated the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 et seq. (Count One), unspecified privacy laws (Count Two), the First Amendment's "right of petition" (Count Three), and constituted gender discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq. (Count Four). UHCMC filed a Petition for Removal to this Court on March 11, 2011.[1] On August 2, 2011, this Court dismissed Counts One and Three of the Complaint.

UHCMC now moves for Summary Judgment as to Plaintiff's remaining claims. Plaintiff's Title VII claim fails first because, by his own admission, he has failed to exhaust his administrative remedies, and second, because he can produce no evidence establishing a prima facie case of reverse gender discrimination, or showing that the reasons for his termination were a pretext for reverse gender discrimination.[1] Plaintiff's invasion of privacy claim fails because,

---

[1] Although Plaintiff's Complaint alleges only sex discrimination in violation of Title VII, his post-Complaint filings with the Court have at least alluded to age discrimination and retaliation as motives for the termination of his employment. He has never amended his Complaint to add age discrimination or retaliation claims, and the Court's

as a matter of law and undisputed facts, he had no reasonable expectation of privacy in the contents of the hard drive of a hospital-owned computer he accessed while at work.

Far from being a victim of discrimination and privacy invasion, Plaintiff was in fact a perpetrator thereof. He was fired for violating the privacy rights of his co-worker/former girlfriend by using a UHCMC computer to show sexually explicit photographs of her to his fellow co-workers, in clear violation of UHCMC policy. UHCMC did what any responsible employer would do, and it should not be subjected to further litigation from a Plaintiff whose hands are not only unclean, but downright filthy.

## II.     RELEVANT FACTS

UHCMC is a provider of tertiary and quaternary health care in Cleveland, Ohio. UHCMC employed Plaintiff Ronnie Moore from 1997 through December 31, 2008, as a Respiratory Therapist. (Sunagel Afft. ¶ 3).[2] His responsibilities included coordinating with Transporters to move patients located in the UHCMC Neurosurgery Unit ("NSU"). (Sunagel Afft. ¶ 3). UHCMC terminated his employment on December 31, 2008, after an investigation established that on November 28, 2008 he used a UHCMC computer in the NSU to view explicit photographs of a fellow employee named Ms. Doe[3] that were attachments to emails stored on his web-based Yahoo email account, and to show those photos to two male co-workers. (Sunagel Afft. ¶¶ 10-17).

---

deadline for amending his Complaint is long past. Even so, Plaintiff's deposition establishes that he has no evidence to establish that the termination of his employment was a pretext for age discrimination, or to establish any causal connection between the termination of his employment and administrative charges he filed more than 20 months earlier. (Plaintiff's Dep. 275-276; Sunagel Afft. ¶ 19, Ex. 11).

[2] The affidavit of Angelique Sunagel, then the HR Manager over Respiratory Therapy, is attached as Appendix A.

[3] To protect the privacy of Plaintiff's female co-worker, her name has been redacted from the attached exhibits and has been replaced with Doe in this Motion. In addition, the last names of Plaintiff's male co-workers who provided statements regarding the incident have also been redacted.

In the NSU, as of November 2008, there were several computers used by UHCMC's employees in support of their patient care services. (Sunagel Afft. ¶ 4). UHCMC identifies each of its computers, including those in the NSU, with an identification number affixed to the computer. One of the NSU computers was labeled as UH021900. (Kuiper Afft. ¶¶ 3, 4)[4].

UHCMC maintains a number of personnel policies outlining in detail its expectations of all of its employees. First, each employee, upon joining UHCMC, is given a copy of the Code of Conduct, and is required to sign an certification stating that he has received a copy of the Code and agrees to abide by it. (Sunagel Afft. ¶ 9). Plaintiff signed such an certification. (Sunagel Afft. ¶ 9 and Ex. 5). The Code of Conduct specifically prohibits "[d]egrading or humiliating jokes, disparaging language, slurs, intimidation or other harassing conduct" and "[v]erbal or physical conduct of a sexual nature that interferes with an individual's work performance or creates an intimidating, hostile or offensive work environment." (Sunagel Afft. ¶ 5 and Ex. 1). UHCMC also had policies which forbade unprofessional behavior including demeaning, intimidating, or abusive behavior and that provided examples of inappropriate conduct that could lead to corrective action including discharge. (Sunagel Afft. ¶¶ 7, 8 and Exs. 3, 4).

The Code of Conduct also specifically discusses electronic media:

> All communication systems, including computers, electronic mail, the Intranet, Internet access, fax machines, telephones and voice mail are the property of the organization and are to be used primarily for business purposes. Reasonable and extremely limited personal use of UH communication systems is permitted; however, these communications are not private. UH reserves the right to access, monitor and disclose the contents of Internet, e-mail and voice mail messages or other communications made through UH Communication systems, consistent with UH policies.
> Employees may not use internal communication channels or access to the Internet at work to post, store, transmit, download

---

[4] The affidavit of Shruthi Kuiper, UHHS Senior Security Analyst, is attached as Appendix B.

>or distribute any material that is threatening, discriminatory, obscene or knowingly, recklessly or maliciously false.

(Sunagel Afft. Ex. 1). Also, UHCMC policy "IS-1 :Internet Use," in place in 2008, put Plaintiff on notice that UHCMC monitored the use of its computers. (Sunagel Afft. ¶ 6 and Ex. 2).

On November 28, 2008, Plaintiff admittedly used a UHCMC computer in the NSU to access his personal Yahoo email account through the Yahoo mail web site. (Plaintiff's Dep. 61, 257).[5] Plaintiff also admits that he maintained at that time, and continues to maintain today, a folder within his Yahoo email account that he named "[ ] XXX." (Plaintiff's Dep. 43, 212, 283-84). He also admits that this folder, as of November 2008, and continuing today, contains several emails to which are attached sexually explicit photos of co-worker Ms. Doe. (Plaintiff's Dep. 218, 223-24).

On December 8, 2008, Ms. Doe submitted a statement complaining that Plaintiff had used a UHCMC computer in the Neurosurgery Unit to show two Transporter employees, Joe and David, sexually explicit photos of Ms. Doe. (Sunagel Afft. ¶ 10, Ex. 6). Also on that same day, UHCMC obtained a statement from Joe admitting that Plaintiff had used a UHCMC computer in the NSU to show him sexually explicit photos of Ms. Doe. (Sunagel Afft. ¶ 11, Ex. 7). Based on the statements of Ms. Doe and Joe, Plaintiff was suspended on December 15, 2008, pending further investigation. (Sunagel Afft. ¶ 12).

In response, Plaintiff submitted his own statement on December 16, 2008, titled "Affidavit of Facts," denying the accusations and claiming that Ms. Doe's past actions, as he characterized them, showed that she was lying to undermine his career. (Plaintiff's Dep. 255-56, Ex. W). That same day, David, who also admitted being shown by Plaintiff a photo of Ms. Doe on a computer in the NSU, showed his manager, Rose Roman, the computer in the NSU on

---

[5] Cited pages from the Deposition of Plaintiff taken September 1 and 9, 2011, are attached in Appendix C.

which he was shown the photo. The computer he identified was the computer with identification number UH021900, and Ms. Roman reported that information to Ms. Sunagel, the investigating Human Resources representative. (Sunagel Afft. ¶ 13).

On December 30, 2008, UHCMC obtained a written statement from David (who had been on vacation) in which he not only admitted that Plaintiff had shown him and Joe sexually explicit photos of Ms. Doe on a computer in the NSU, but also indicated the date -- November 28, 2010. (Sunagel Afft. ¶ 14, Ex. 8). Using the information supplied by David, a UHCMC information technology specialist, Shruthi Kuiper, conducted a search of the hard drive on computer UH021900. (Kuiper Afft. ¶ 6).

Ms. Kuiper discovered a "GIF" file with the phrase "Trip with Ronnie" in its title, that stored a sexually explicit photograph of an African-American woman in a bathtub. (Kuiper Afft. ¶ 11). She also found several other GIF files containing sexually explicit photographs of what appeared to be the same woman, as well as two photographs of Plaintiff. (Kuiper Afft. ¶ 13). Every one of the files had been created within a three-minute span on November 28, 2008, indicating that they had been viewed on the computer during those three minutes. (Kuiper Afft. ¶ 13).

Although Plaintiff denies even viewing the photos in question that day, Plaintiff now admits that he used a computer in the NSU on November 28, 2008 to access his e-mail account, and admits that every one of the photos found by Ms. Kuiper on computer UH021900 was an attachment to an email stored in his "[ ] XXX" folder of his Yahoo email account, and admits that as of that time, he kept his password for his email account a secret. (Plaintiff's Dep. 61, 63,

212, 218, 257).[6] Ms. Kuiper copied the electronic files containing these images to a CD and delivered it to UHHS in-house legal counsel Marcie Manson who in turn hand delivered the CD to Ms. Sunagel. (Kuiper Afft. ¶ 12; Sunagel Afft. ¶ 15).

Based on the statements obtained from Joe and David, their identification of the computer at issue, and the GIF files obtained from the UHCMC computer UH021900 in the NSU (which were all created on the date supplied by David as the date on which Plaintiff showed him the photos), UHCMC terminated Plaintiff's employment on December 31, 2008. His termination was for violating UHCMC policies HR-72 (Corrective Action - Section 3, titled "Reasons for discharge," nos. 10 (any type of harassment, language or conduct which creates a hostile work environment) and 24 (inappropriate use of email, the intranet or internet)); HR-63 (Professional Behavior, Section 2, titled "Demeaning, intimidating or abusive behavior"); and IS-1 (Internet Use, pertaining to "Unauthorized use of the internet" and "Objectionable material such as pornography"). (Sunagel Afft. ¶¶ 16, 17 and Exs. 1, 2, 3, 4).

Plaintiff was issued a termination form detailing the bases for the termination. (Sunagel Afft. ¶ 18, Ex. 9). That same day, Plaintiff entered his own statement on that form. He also submitted an additional typewritten statement, in the form of a letter to Ms. Sunagel, in which he claimed that Joe and David lied because of their personal interest in Ms. Doe, and that his termination was based on gender discrimination (for believing Ms. Doe's story) and retaliation (based on prior charges that Plaintiff had filed, most recently more than 20 months earlier, on April 13, 2007.) (Sunagel Afft. ¶ 19, Exs. 10, 11).

---

[6] In his deposition, Plaintiff was shown only redacted copies of the photos found by Ms. Kuiper, but identified them all as redactions of photos stored in his Yahoo email folder titled "[ ] XXX." (Plaintiff's Dep. 211-12, 218 and Ex. U; Kuiper Afft. ¶ 13, Ex. 2).

Plaintiff also invoked the UHCMC Grievance Procedure, during which he presented another statement, claiming that UHCMC should give weight to his accusations concerning his prior interpersonal conflicts with Ms. Doe, questioning how all the photos could be viewed in the space of 3 minutes, and complaining that he was not shown all the photos. (Sunagel Afft. ¶ 20, Ex. 12). After a two-step grievance procedure, a four-employee peer review committee unanimously upheld the termination decision. (Sunagel Afft. ¶ 20, Ex. 13).

### III. LAW AND ARGUMENT

#### A. Summary Judgment Standard.

Where, as here, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact" the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). As shown below, the undisputed facts compel summary judgment in favor of UHCMC as to all the remaining causes of action in the Complaint.

#### B. Plaintiff's Title VII Claims Are Barred As A Matter Of Law For Failure To Exhaust Administrative Remedies.

Plaintiff's claim under Title VII must be dismissed because he has failed to exhaust his administrative remedies with the Equal Employment Opportunity Commission ("EEOC") or the Ohio Civil Rights Commission ("OCRC") prior to filing suit. It is well-established that before a plaintiff may sue under Title VII in federal court he "must first exhaust [his] administrative remedies, one component of which is timely filing a 'charge' with the EEOC." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 507-08 (6th Cir. 2011). An exception lies for charges initially instituted with a state agency, such as the Ohio Civil Rights Commission ("OCRC"), that is an authorized state agency under 42 U.S.C. § 2000e-5(e)(1).

Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of a Title VII action. *See, e.g., Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359 (6th Cir. 2010); *Mayers v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 03-5708, 2004 U.S. App. LEXIS 11653 (6th Cir. June 10, 2004) (dismissing Title VII claim of pro se litigant for failure to timely file a charge with the EEOC and failure to obtain a right-to-sue letter); *Oliver v. St. Luke's Dialysis, LLC d/b/a Shaker Square Dialysis*, No. 1:10-cv-2667, 2011 U.S. Dist. LEXIS 40147 (N.D. Ohio Apr. 5, 2011, J. Gwin).

Here, Plaintiff admits that he never filed a charge with the EEOC or the OCRC regarding the termination of his employment at UHCMC:

> Q: Okay.  So did you ever submit a charge to the OCRC or the EEOC concerning the termination of your employment at UH?
>
> A: No.
>
> . . .
>
> Q: All right.  But you still decided not to pursue anything with the OCRC or EEOC pertaining to your termination; do I have that right?
>
> A: That's correct.

(Plaintiff Dep. 78-79.)  Because Plaintiff failed to exhaust his administrative remedies, his Title VII claim must be dismissed as a matter of law.

    **C.**    **Even If Plaintiff's Failure To Exhaust His Administrative Remedies Could Be Ignored, He Has No Evidence to Establish a Prima Facie Case of Reverse Gender Discrimination of to Prove That The Reasons For The Termination Of His Employment Were A Pretext For Reverse Gender Discrimination.**

Title VII claims proceeding on circumstantial evidence are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 207 (1981).  *Badertscher v. P&G Mfg. Co.*, No. 09-4486, 2011 U.S. App. LEXIS

243, *3 (6th Cir. Jan. 4, 2011). The plaintiff must first establish a *prima facie* case by showing that: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees. *Wright v. Murray Guard, Inc.*, 455 F.3d 702 (6th Cir. 2006) (upholding summary judgment in favor of employer on employee's reverse gender discrimination claim where employee was terminated after allegedly sexually harassing subordinates). Throughout the burden-shifting approach, the plaintiff "continues to bear the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate." *Id.* at 707.

"[A] prima facie case of 'reverse discrimination' is established upon a showing that '"background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority,' ... and upon a showing that the employer treated differently employees who were similarly situated but not members of the protected group." *Murray v. Thistledown Racing Club*, 770 F.2d 63, 67 (6th Cir. 1985), citations omitted. *See also Zambetti v. Cuyahoga Community College*, 314 F.3d 249, 256 (6th Cir. 2002) (stating that such evidence "justifies a suspicion that incidents of capricious discrimination against whites because of their race may be likely").

If the plaintiff establishes a *prima facie* case, the defendant then bears the burden of production to put forth a "legitimate, non-discriminatory reason" for the complained of adverse treatment. *Id.* If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason was a "pretext for discrimination." *Id.*

First, Plaintiff can produce no evidence of "background circumstances [to] support the suspicion that [UHCMC] is that unusual employer who discriminates against" males.

Even assuming for purposes of this motion only that Plaintiff could establish a *prima facie* case, UHCMC has articulated a good faith, non-discriminatory reason for its termination of the employment of Plaintiff. The statements of co-workers Joe and David, coupled with the IT investigation of computer UH021900 in the NSU, established that Plaintiff had used a UHCMC computer to access and display to Joe and David sexually explicit photos that he stored in his Yahoo email account, in violation of UHCMC policies. (*See* Sunagel Afft. ¶¶ 11, 13, 14, 16 and Exs. 1-4, 6-8; Kuiper Afft. ¶¶ 11-13, Exs. 1, 2).

Further, Plaintiff's deposition testimony establishes that he has no triable claim that the reason articulated by UHCMC for the termination of his employment was a pretext for reverse gender discrimination. To demonstrate pretext, a plaintiff must show either that the proffered reasons had no basis in fact, did not actually motivate the employer to take the adverse action, or were insufficient to motivate the adverse action. *Jones v. Best Buy Stores, L.P.*, No. 1:08 cv 2717, 2010 U.S. Dist. LEXIS 8761, *23 (N.D. Ohio Feb. 2, 2010). Here, Plaintiff admits that the only basis for his claim that the decision to terminate his employment was the product of reverse gender discrimination is the mere fact that he is male and the employee whose complaint led to the termination of his employment, Ms. Doe, is female. (Plaintiff Dep. 276-77, 280)[7]. Because Plaintiff cannot provide any evidence that UHCMC's proffered reason for his termination was pretextual, Plaintiff's Title VII claim should be dismissed and summary judgment entered in favor of UHCMC.

---

[7] Plaintiff also testified that he did not have any evidence to establish a claim of age discrimination other than the mere fact that he's over 40 years old and Ms. Doe was not. (Plaintiff Dep. 275-76, 280-81). Similarly, Plaintiff testified that he does not have any evidence to establish a claim of retaliation other than the fact that he filed a charge more than 20 months prior to his termination. (Plaintiff Dep. 278-79).

    **D.**    **Plaintiff's Privacy Claim Fails.**

    **1.**    **UHCMC did not invade Plaintiff's privacy.**

Without any factual support, Plaintiff generally alleges that UHCMC invaded his privacy. Plaintiff's allegations appear to be based on a misunderstanding of how a computer processes documents downloaded from the internet, leading him to the false belief that UHCMC accessed his email account. As shown below, UHCMC did not invade Plaintiff's privacy when it searched the hard drive of its own computer for files stored on that computer.

Under Ohio law, there are four potential causes of action for invasion of privacy, and each is addressed in turn below.

    **2.**    **UHCMC did not intrude on Plaintiff's seclusion.**

One potential cause of action for invasion of privacy under Ohio law is intrusion upon seclusion. To make a claim for intrusion of seclusion, the plaintiff must show that the defendant intentionally intruded, physically or otherwise, upon another's solitude, seclusion, or private affairs, and a reasonable person would find the intrusion highly offensive. *Morenz v. Progressive Cas. Ins. Co.*, Case No. 79979, 2002 Ohio App. LEXIS 2474, at * 10-11 (Ohio App. 8th Dist. May 23, 2002). An invasion of seclusion "implicates an individual's reasonable expectation of privacy and seclusion." *Turner v. Shahed Enters.*, No. 10AP-892, 2011 Ohio App. LEXIS 3851, *13 (Ohio App. 10th Dist. Sept. 15, 2011).

As stated in *Campbell v. Woodard Photographic, Inc*., 433 F. Supp. 2d 857, 862 n.4 (N.D.Ohio 2006), when an employer "advis[es] its employees that their computer activities on the office system [are] monitored," employees have "no reasonable expectation of privacy in records" they access through employer computers." *Id*., *citing Guest v. Leis*, 255 F.3d 325, 333 (6th Cir. 2001) (citations omitted) (no privacy interest where employer posted privacy disclaimer regarding computer files); *United States v. Thorn*, 375 F.3d 679, 683 (8th Cir. 2004) rev'd on

other grounds (no reasonable expectation of privacy where employer's computer use policy stated employer audited use); *United States v. Angevine*, 281 F.3d 1130, 1134-35 (10th Cir. 2002) (no reasonable expectation of privacy where employer had express policy to monitor computer use); *United States v. Bailey*, 272 F.Supp.2d 822, 824 (D.Neb. 2003) (no reasonable expectation of privacy where employer repeatedly warned employee his computer activities were subject to monitoring); *McLaren v. Microsoft Corp.*, 1999 WL 339015 (Tex.App. 1999) (workplace email stored under a private password but transmitted via employer's server negated any reasonable expectation of privacy). *See also Olson v. Holland Computers*, No. 06CA008941, 2007 Ohio App. LEXIS 4265 (Ohio App. 9th Dist. Sept. 17, 2007) (an employee has no reasonable expectation of privacy when an employer has access to work e-mail and telephone calls); *Branan v. Mac Tools*, 10th Dist. No. 03AP-1096, 2004-Ohio-5574 (employee had a diminished expectation of privacy because he was aware that his e-mail and cell phone records were being examined by his employer); *Matikas v. Univ. of Dayton*, 152 Ohio App.3d 514, 2003-Ohio-1852, 788 N.E.2d 1108 (dismissing violation of privacy claim when evidence established that the seized laptop was the employer's property and the employee failed to show that the employer accessed or disclosed any private information).

Plaintiff admits that he accessed his Yahoo email account through a UHCMC computer on November 28, 2008. (Plaintiff Dep. 257.) Plaintiff used UHCMC computer number UH021900 (the "Computer"). (Kuiper Afft. ¶ 4; Sunagel Afft. ¶ 11). As outlined in the facts section above, Shruthi Kuiper, Senior Security Analyst, searched the hard drive of that Computer for files created through internet activity that occurred on November 28, 2008. (Kuiper Afft. ¶¶ 4-6). All computers, including those at UHCMC, create a "cache" whenever a user accesses the internet. The cache stores information about what internet pages were viewed and what, if

anything, was downloaded to the computer.[8]   Through her search of the Computer's hard drive, Ms. Kuiper discovered files containing the sexually explicit photos that Plaintiff had viewed on the Computer.  (Kuiper Afft. ¶¶ 11-13).

As a UHCMC employee, Plaintiff was aware of UHCMC's employee policies and procedures, which he could access at any time through UHCMC's internal computer system.  (Sunagel Afft. ¶ 9).  As a condition of their employment, all UHCMC employees agree to abide by UHCMC's policies and procedures.  (Sunagel Afft. ¶ 9 and Ex. 5).  UHCMC's Code of Conduct specifically states that UHCMC may access, monitor and disclose the contents of internet and email messages made through UHCMC communication systems.  (Sunagel Afft. Ex. 1).  Plaintiff specifically acknowledge receiving UHCMC's Code of Conduct.  (Sunagel Afft. ¶ 9 and Ex. 5).  One of UHCMC's personnel policies, IS-1, specifically addresses internet use.  (Sunagel Afft. ¶ 5, Ex. 2)  Under that policy, UHCMC "provides Internet access to UH[CMC] workforce members to help them perform their legitimate UH[CMC] clinical and business duties."  (Sunagel Afft. Ex. 2.)  However, "UH[CMC] workforce members may **not** use Internet access for personal, illegal, or unapproved purposes."  (*Id.*, emphasis added)  Further, the policy provides that "UH[CMC] monitors and audits Internet use to measure network and Internet availability, troubleshoot problems, investigate UH[CMC] policy and security violations, and for other purposes as needed."  (*Id.*)  The policy also explicitly states that failure to comply can subject employees to sanctions "up to and including termination."  (*Id.*)

UHCMC did not intrude on Plaintiff's seclusion because Plaintiff was improperly accessing his personal email at work and because a reasonable person would not find any alleged intrusion highly offensive.  Pursuant to UHCMC's Code of Conduct and its internet policy, IS-1,

---

[8] For a more detailed discussion of how a computer accesses photo files from an internet-based email account such as Yahoo, see Ms. Kuiper's affidavit at ¶¶ 7-11.

and Plaintiff's own Certification of Compliance, Plaintiff was aware that UHCMC monitored internet use on its computers and that UHCMC prohibited employees from using the computers for personal reasons. Therefore, Plaintiff did not and could not have had a reasonable expectation of privacy when he opened personal emails on the Computer.[9] There is no evidence that UHCMC gained access to Plaintiff's email, or otherwise accessed Plaintiff's personal information, but only retrieved photo files automatically saved to the hard drive of UHCMC's Computer because Plaintiff used that Computer to view the photos.

### 3. UHCMC did not appropriate Plaintiff's name or likeness.

Ohio recognizes a claim for invasion of privacy where "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy, and the use or benefit need not necessarily be commercial." *Parma Internat'l, Inc. v. Bartos*, No. 89CA004573, 1990 Ohio App. LEXIS 508, *12 (Ohio App. 9th Dist. Feb. 7, 1990). The action is premised on the recognition that an individual has an interest in the exclusive use of his own identity. *Id.* Liability "is only present when the defendant uses the plaintiff's name or likeness to obtain for himself the benefits normally associated with the plaintiff's identity or reputation." *Id.*

Based on Plaintiff's deposition testimony, it is clear that he is not alleging that UHCMC appropriated his name or likeness. (Plaintiff Dep. 80-85).

---

[9] Plaintiff's claims of invasion of privacy appear to reflect nothing more than his misunderstanding of the operation of computers, leading him to believe that UHCMC somehow gained access to his email account. Plaintiff admits that he does not understand how photos that are viewed on a computer get written to a hard drive. (Plaintiff Dep. 269.) Further, Plaintiff admitted that he has "no technical knowledge of writing on hard drives." (Plaintiff Dep. 269.)

### 4. UHCMC did not publicly disclose Plaintiff's personal information.

Similarly to a claim for intrusion on seclusion, to recover for an invasion of privacy by public disclosure of private facts, the plaintiff must prove the following elements: (1) the existence of a public disclosure; (2) the public disclosure pertained to facts of an individual's private life; (3) the disclosure would be highly offensive and objectionable to a reasonable person; (4) the disclosure was intentional; and (5) the subject of the public disclosure "is not of legitimate concern to the public." *Roe v. Heap*, Case No. 03AP-586, 2004 Ohio App. LEXIS 2093, at *34 (Ohio App. 10th Dist. May 11, 2004) (internal citations omitted).

Plaintiff's deposition testimony establishes that he is not alleging that UHCMC publicly disclosed his private information. (Plaintiff Dep. 80-85). And, in any event, UHCMC disclosed the results of its Computer search only to employees involved in Plaintiff's suspension and termination. UHCMC shared those results because it, like the employer in *Garofolo*, has an interest in creating a safe working environment for all of its employees. Moreover, as discussed above, Plaintiff did not have a reasonable expectation of privacy in information that he downloaded on a UHCMC computer.

### 5. UHCMC did not place Plaintiff in a false light.

The fourth potential claim for invasion of privacy under Ohio law is for false light. To establish the tort of false light invasion of privacy, the plaintiff must prove the publication of a matter that puts the plaintiff before the public in a false light, the false light would be highly offensive to a reasonable person, and "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Welling v. Weinfeld*, 113 Ohio St. 3d 464, 473 (Ohio 2007).

Based on Plaintiff's deposition testimony, it is clear that he is not alleging that UHCMC publicized private facts about him. (Plaintiff De. 80-85). And, regardless, as discussed above, UHCMC did not publicize private facts regarding Plaintiff. Further, the results of UHCMC's computer search were based on a skilled, technical analysis of the Computer. There is no evidence that the information returned from that search is false.

### IV. CONCLUSION

As to Plaintiff's Title VII claim, Plaintiff failed to exhaust his administrative remedies and he can produce no evidence to establish a prima facie case of reverse gender discrimination or to prove that UHCMC's proffered reasons for Plaintiff's termination were a pretext for reverse gender discrimination. As to Plaintiff's privacy claim, Plaintiff had no reasonable expectation of privacy in the contents of the hard drive of the UHCMC computer that he used to access the internet to show co-workers sexually explicit photos he had stored in his internet email account against UHCMC policy. Accordingly, UHCMC respectfully requests summary judgment in its favor as to all of Plaintiff's remaining claims.

Respectfully submitted,

*/s/ Barton A. Bixenstine*
Barton A. Bixenstine (0034130)
**Vorys, Sater, Seymour and Pease LLP**
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, OH 44114-1724
Telephone (216) 479-6192
Facsimile (216) 973-3708
Email  babixenstine@vorys.com

*Counsel for Defendant University Hospitals Cleveland Medical Center d/b/a University Hospitals Case Medical Center*

## **CERTIFICATE OF SERVICE**

A copy of the foregoing *Motion for Summary Judgment and Memorandum in Support* has been served by ordinary U.S. mail, postage prepaid, this 26th day of September, 2011, upon the following:

Ronnie Moore
c/o Napoleon Allen
6716 Quimby Ave.
Cleveland, OH 44103

Ronnie Moore
c/o 18605 Harlan Drive
Maple Heights, OH 44137

*Pro Se Plaintiff*

                                      */s/ Barton A. Bixenstine*_____
                                      *Attorney for Defendant University Hospitals Cleveland*
                                      *Medical Center d/b/a/ University Hospitals Case Medical*
                                      *Center*