UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------
:
RONNIE MOORE, :
: CASE NO. 1:11-CV-00508
       Plaintiff, :
:
   v. : OPINION & ORDER
: [Resolving Doc. Nos. 30, 32, 37, 43]
UNIVERSITY HOSPITALS CLEVELAND :
MEDICAL CENTER, :
:
       Defendant. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this wrongful termination case, the pro se Plaintiff, Ronnie Moore, alleges that his former employer, Defendant University Hospitals Cleveland Medical Center ("UHCMC") improperly fired him based upon his gender. Moore also alleges that UHCMC committed some sort of privacy law violation. [Doc. 1-1.] UHCMC, saying that Moore was fired after he used a company computer to show co-workers sexually explicit photos of another co-worker, moves for summary judgment. [Doc 30.] Subsequently, Moore moved to amend his original complaint, submitted a "motion to claim and exercise constitutional rights," and a motion to strike UHCMC's motion for summary judgment.[1] [Doc. 37.] [Doc. 32.] [Doc. 43.] For the following reasons, the Court **GRANTS** UHCMC's motion for summary judgment and **DENIES** Moore's motion to amend his complaint.

### I. Background

Ronnie Moore worked at University Hospitals Cleveland Medical Center as a respiratory

---

[1] The Court interprets this cornucopia of documents as Moore's opposition to UHCMC's motion for summary judgment.

Case No. 1:11-CV-00508
Gwin, J.

therapist from 1997 to 2008. [Doc 30-1 at ¶ 3.] After Moore and a female co-worker broke off a tumultuous romantic relationship, an even more tumultuous relationship developed—Moore's ex-girlfriend filed a criminal complaint of phone harassment against him and Moore reported her for threatening text messages. [Doc. 19-1 at 3, 24.]

In December 2008, Moore's ex-girlfriend complained to her superiors at UHCMC. She told them that on November 28, 2008, Moore showed two other male co-workers sexually explicit photographs of her on a computer in the Hospital's Neurosurgery Unit. The two male co-workers substantiated the story and identified the computer that Moore had used to show them the photographs— a UHCMC-owned computer located in an open workstation on the Neurosurgery Unit.

UHCMC instituted an electronic search of the computer. [Doc. 30-1 at ¶ 15.] The search revealed that on November 28, 2008, 23 photographs were viewed on the computer within a three-minute span.[2/] Some of those 23 photos contained Moore's name in the file name and were sexually explicit images of women (including Moore's ex-girfriend/co-worker). [Doc. 30-2 at ¶¶ 11-12.]

Moore admits that he used the computer to access his email account on November 28, 2008. Moore also admits that he maintains a "XXX" folder in his email account that contains explicit pictures contained in email attachments. The pictures on the UHCMC drive are identical to those in Moore's "XXX" folder. [Doc. 30-3 at 212, 218, 257.] Although Moore's account is protected with a password he has not shared with anyone else, he denies accessing the pictures or sharing them with his male co-workers. [Doc. 30-3 at 63.]

---

[2/] Apparently, when a user opens an email attachment, a temporary internet file is created on the computer's hard drive. Unless the user manually deletes the temporary files, they remain on the computer's hard drive for all to see.

Case No. 1:11-CV-00508
Gwin, J.

On December 31, 2008, UHCMC fired Moore for violating a number of company policies: 1) any type of harassment, language or conduct which creates a hostile work environment; 2) inappropriate use of email, the intranet, or internet; 3) professional misbehavior; and 4) unauthorized internet use. In response, Moore sent a letter to Human Resources officer Angelique Sunagel saying that the male co-workers lied; accusing UHCMC of retaliation and discrimination against him; and unsuccessfully appealed his termination through University Hospitals's two-step grievance procedure. [Doc. 30-1 at ¶¶ 17-20.] Evidently, Moore never filed a post-termination charge of discrimination with either the Equal Employment Opportunity Commission ("EEOC") or the Ohio Civil Rights Commission.

With this suit, Moore asserts claims under Title VII and that UHCMC violated unnamed privacy laws. In its motion for summary judgment, UHCMC argues that 1) Plaintiff's Title VII claims are barred for failure to exhaust administrative remedies; 2) Plaintiff fails to present evidence of gender discrimination to establish either a prima facie case or pretext for a reverse gender discrimination claim; and 3) UHCMC did not invade Plaintiff's privacy under iteration of Ohio's privacy laws. [Doc. 30.]

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a grant of summary judgment is proper if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden to show the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). This burden is met by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The

Case No. 1:11-CV-00508
Gwin, J.

burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, the Court "considers the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party." *Lenscrafters, Inc. v. Robinson*, 403 F.3d 798, 802 (6th Cir. 2005) (citations omitted).

### III. Analysis

*A. Motion to Amend Complaint*

"Ordinarily, leave to amend a complaint or other pleading shall be freely granted 'when justice so requires.' However, leave to amend should be denied if 'the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'" *Murphy v. Grenier*, 406 Fed.Appx. 972, 977 (6th Cir. 2011) (unpublished) (citing Fed.R.Civ.P. 15(a) and *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir.1995)).

On October 14, 2011, Moore filed a motion to amend his original civil complaint. [Doc. 37.] With the motion, Moore seeks to add the following claims:

> Age and Gender Discrimination; permissible Libel Slander and Defamation of Character; Sexual Discrimination (as it relates to a permissible hostile work environment); Conspiracy with/for Retaliation; Tampering with Evidence, Tampering with records, Breach of Privacy Laws, Violation of the VII of the Civil Rights Act of 1964, OCRC Violations, EEOC Violations, Violation of Administrative Processes; Informal Railroading (Blackball); and Wrongful Termination.

[Doc. 37.] Moore also says that his damages have increased "from 1.5 Million to Ten (10) Million Dollars in functional U.S. Currency." [Doc. 37.]

-4-

Case No. 1:11-CV-00508
Gwin, J.

As UHCMC points out, this motion comes exceedingly late in the game. *See* [Doc. 41.] Moore filed this motion subsequent to his deposition, two days shy of the dispositive motion deadline, after UHCMC already filed a motion for summary judgment, and a full 108 days after the Court's amendment cutoff date. As such, the Court is disinclined to find that "justice so requires" leave to amend. Fed.R.Civ.P. 15(a)(1).

If granted, Moore's proposed amendment would prejudice UHCMC and cause undue delay. Aside from seeking an additional $8.5 million in damages, Moore's motion to amend his complaint adds—by the Court's count—17 new causes of action against UHCMC. Against the factual record developed to date, none seem remotely plausible. At this late stage, and after UHCMC has timely filed its dispositive motions, UHCMC would be unfairly prejudiced by such a flood of new claims. Moreover, the additional discovery required to prove (or defend) seventeen more claims would result in substantial, unwarranted delay in a case that has been pending since in this Court since March 11, 2011. Even bearing in mind that Moore is proceeding pro se, the Court will not allow such unsubstantiated additions. *See Murphy*, 406 Fed. Appx. at 977 (upholding the District Court's denial of a pro se plaintiff's late-filed motion to amend). The Court therefore denies Moore's motion to amend.

*B. Gender Discrimination*

"Before a plaintiff may sue under Title VII in federal court, she must first exhaust her administrative remedies, one component of which is timely filing a 'charge' with the EEOC." *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 507-08 (6th Cir. 2011) (citing 42 U.S.C. § 2000e–5(e), (f) and *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir.2010)). The putative Title VII plaintiff must file an EEOC charge within 180 days "after the alleged unlawful

Case No. 1:11-CV-00508
Gwin, J.

employment practice occurred," or file a charge with a state agency within 300 days. 42 U.S.C. § 2000e–5(e)(1). If the EEOC finds "reasonable cause to believe that title VII . . . has been violated, has been unable to obtain voluntary compliance with title VII . . . and where the Commission has decided not to bring a civil action against the respondent, it will issue a notice of right to sue on the charge" to the aggrieved party. 29 CFR § 1601.28(b)(1). With a right-to-sue letter in hand, a plaintiff then has ninety days to bring a civil suit against the offending party. 29 CFR § 1601.28(e)(1). *See also Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998) (holding that a "right-to-sue letter is a condition precedent and not a jurisdictional requirement.").

Suggesting that he did file a charge with the EEOC, Moore's complaint says, "This compliant [sic] is based on Gender Discrimination resulting in Employment termination lacking Just Cause and Conspiracy as evidenced in documents that was shown and proven to Human Resources as initiated with Civil rights Commission (EEOC)." [Doc 1-1 (capitalization in original)] On August 2, 2011, this Court ordered Moore to file a right-to-sue letter within 20 days. Having submitted numerous other documents, Moore apparently understands the filing process. Nonetheless, he has completely ignored the Court's order. Furthermore, Moore testified that he did not file a charge with either the EEOC or the Ohio Civil Rights Commission after UHCMC fired him.[3/]  [Doc. 30-3 at 78-79.] Because Moore failed to exhaust his administrative remedies (and is now well beyond the time in which he could do so), his gender discrimination claim under Title VII fails. The Court therefore grants UHCMC's motion for summary judgment on gender discrimination.

*B. Violation of Privacy Laws*

---

[3/] In response to a request for admission, Moore further confirmed that he has not exhausted his administrative. Moore says, "Correct, this is accurate, no communication from either [the EEOC or the Ohio Civil Rights Commission] have been in effect." [Doc. 28-1.]

Case No. 1:11-CV-00508
Gwin, J.

Without providing specific allegations of wrongdoing, Moore makes the additional claim that UHCMC committed a "violation of Privacy Laws." [Doc. 1-1.] Ohio law recognizes four invasion of privacy causes of action: 1) intrusion of seclusion; 2) false light; 3) public disclosure of private facts; and 4) appropriation of another's name or likeness. *See* Welling v. Weinfeld, 113 Ohio St.3d 464, 866 N.E.2d 1051 (2007). Although Moore has yet to identify the cause of action under which he hoped to proceed or, indeed, to submit any evidence to support such a claim, it seems that he believes UHCMC "broke into" his email account. [Doc. 30-3 at 85.] The Court finds that Plaintiff is not asserting a claim for appropriation of another's name or likeness,[4] false light,[5] or public disclosure.[5] It seems that Moore's only possible claim is for an intrusion of seclusion.

Citing Section 652B of the Restatement of Torts 2d, the Ohio Supreme Court said, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Sustin v. Fee, 431 N.E.2d 992, 993-94 (Ohio 1982). The key language is that the affairs or concerns must be *private* to rise to be actionable as an invasion of privacy. *See* Olson v. Holland Computers, Inc., 2007 WL 2694202, at*4 (Ohio Ct.

---

[4] The Ohio Supreme Court defined this privacy tort as "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy, and the use or benefit need not necessarily be commercial." Zacchini v. Scripps-Howard Broadcasting Co., 351 N.E.2d 454 at ¶1 (Ohio 1976) (explaining that a "human cannonball" performer has the right to the publicity value of his performance) (overruled on other grounds, 433 U.S. 562 (1977)).

[5] Under a theory of false light, the plaintiff bears the burden to show that "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Welling v. Weinfeld, 113 Ohio St. 3d 464, 473 (2007).

[5] As an initial matter, a public disclosure claim requires publicity. And under Ohio law, "Publicity means communicating the matter to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge as opposed to "publication" as that term of art is used in connection with liability for defamation as meaning any communication by the defendant to a third person." Killilea v. Sears, Roebuck & Co., 499 N.E.2d 1291, 1294 (Ohio Ct. App. 1985).

Case No. 1:11-CV-00508
Gwin, J.

App. 2007) ("In order to establish a wrongful intrusion into private activities, a plaintiff must show that he or she had a reasonable expectation of privacy in the area allegedly intruded."

First, Moore's theory of invasion of privacy seems to rest on a misunderstanding of the technology and how files are save to computer hard drives. UHCMC's Senior Security Analyst, Shruthi Kuiper explains that the investigation of illicit activity did not require access to Moore's email. Rather, because Moore—by his own admission— accessed his email account on UHCMC's computer, the images he viewed were automatically saved to the computer hard drive. Furthermore, UHCMC's Code of Conduct (which was readily available to all employees and agreement to which is a condition of employment) specifically warns employees that the hospital "monitors and audits internet use to measure network and Internet availability, troubleshoot problems, investigate UH[CMC] policy and security violations, and for other purposes as needed." [Doc. 30-1 at 40.] UHCMC also advised its employees that "[r]easonable and extremely limited personal use of UH[CMC] communications systems is permitted; however, these communications are not private. UH reserves the right to access, monitor and disclose the contents of Internet, email and voice mail messages or other communications made through UH Communication systems, consistent with UH[CMC] policies." [Doc. 30-1 at 25.]

Second, Moore's own testimony belies his 'hacking' theory. Explaining why he believes UHCMC broke into his email account, Moore said, "there is no way you can get to those [explicit photographs] and open each pic in five minutes time. It's impossible." [Doc. 30-3 at 85.] Although the Court cannot offer an opinion on the speed at which Ms. Kuiper navigates the internet, opening the "pics" was unnecessary if they were saved on the computer's hard drive. Beyond his bare theory of UHCMC's hacking, Moore does not present evidence that UHCMC accessed his email account.

-8-

Case No. 1:11-CV-00508
Gwin, J.

In any event, Moore cannot seriously argue that he had any expectation of privacy in an email account he accessed on a hospital-owned computer sitting in the middle of a hospital floor within the easy view of both patients and other staff-members. *See* [Doc. 30-1 at 60.] Finding no genuine issues of material fact, the Court grants UHCMC's motion for summary judgment on Moore's privacy law claim.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** UHCMC's motion for summary judgment and **DENIES** the Moore's motion to amend his complaint.

IT IS SO ORDERED.


Dated: November 15, 2011              s/        *James S. Gwin*
                                      JAMES S. GWIN
                                      UNITED STATES DISTRICT JUDGE